IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDY RAMIREZ,<br><br>    Petitioner,<br><br>  vs.<br><br>ANTHONY HEDGPETH, Warden,<br><br>    Respondent.<br>_____/ | No. C 12-00872 YGR (PR)<br><br>**ORDER GRANTING RESPONDENT'S MOTION TO DISMISS; AND DENYING A CERTIFICATE OF APPEALABILITY**<br><br>(Docket No. 8) |

Petitioner, a state prisoner, has filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging a 2009 prison disciplinary finding imposed by prison staff at Salinas Valley State Prison ("SVSP").

In an Order dated March 14, 2012, the Court ordered Respondent to show cause why the writ should not be granted. Petitioner was also granted leave to proceed *in forma pauperis*.

Before the Court is Respondent's motion to dismiss ("MTD") the instant petition on the grounds that the challenged disciplinary action does not implicated the fact or duration of Petitioner's confinement. Petitioner filed an opposition to the motion to dismiss. Respondent filed a reply.

Having considered all of the papers filed by the parties, the Court GRANTS Respondent's motion to dismiss.

**BACKGROUND**

On October 5, 2009, prison staff at SVSP observed Petitioner and another inmate engaged in a fight. (Resp't Ex. 1.) According to the Rules Violation Report ("RVR"), Petitioner "was observed by staff actively involved in a Riot involving (6) six inmates." (*Id.*) It further states: "Numerous force options were required to quell the incident and one involved inmate received life threatening injuries." (*Id.*)

At his November 9, 2009 disciplinary hearing, Petitioner was found guilty of participation in a riot. (*Id.*) He was initially assessed a ninety-day forfeiture of credit. (*Id.*) However, because

1 Petitioner is serving a sentence of life without the possibility of parole ("LWOP"), he forfeited no
2 time credits as a result of this guilty finding. (Resp't Ex. 2.)

3 Petitioner filed the instant federal habeas petition on February 13, 2012.

## DISCUSSION

Respondent now moves to dismiss the petition for failure to state a claim for relief because Petitioner's claims do not implicate the fact or duration of his confinement. Respondent argues that Petitioner challenges a prison disciplinary finding which did not result in forfeiture of any time credit and thus his dispute cannot impact the duration of his confinement. (MTD at 2-3 (citing *Ramirez v. Galaza*, 334 F.3d 850, 859 (9th Cir. 2003) (no federal habeas jurisdiction where successful challenge to disciplinary proceeding would not necessarily shorten inmate's sentence)).)

Petitioner alleges that his claims are properly brought in habeas. While he concedes that he was not assessed any credit loss as a result of the guilty finding, Petitioner claims that he was housed at the Security Housing Unit ("SHU") at SVSP for an unspecified term. (Opp'n at 3.) He also argues that "prison officials will use his prior RVR conviction to give him an 'indeterminate SHU sentence['] should [he] receive another SHU term for her will be classified as a disruptive inmate." (*Id.*)

Interests that are procedurally protected by the Due Process Clause may arise from two sources -- the Due Process Clause itself and laws of the states. *See Meachum v. Fano*, 427 U.S. 215, 223-27 (1976). In the prison context, these interests are generally ones pertaining to liberty. Changes in conditions so severe as to affect the sentence imposed in an unexpected manner implicate the Due Process Clause itself, whether or not they are authorized by state law. *See Sandin v. Conner*, 515 U.S. 472, 484 (1995) (citing *Vitek v. Jones*, 445 U.S. 480, 493 (1980) (transfer to mental hospital), and *Washington v. Harper*, 494 U.S. 210, 221-22 (1990) (involuntary administration of psychotropic drugs)). Here, Respondent argues that Petitioner's 2009 disciplinary violation did not involve a change so severe as to implicate the Due Process Clause itself.

Deprivations that are less severe or more closely related to the expected terms of confinement may also amount to deprivations of a procedurally protected liberty interest, provided that state statutes or regulations narrowly restrict the power of prison officials to impose the

deprivation and that the liberty in question is one of "real substance." *See Sandin*, 515 U.S. at 477-87. An interest of "real substance" will generally be limited to freedom from restraint that imposes "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" or "will inevitably affect the duration of [a] sentence." *Sandin*, 515 U.S. at 484, 487.

In *Sandin*, the United States Supreme Court explained what does not qualify as an interest of "real substance." *Sandin* determined that the possible effect of a disciplinary decision on parole consideration did not show that the disciplinary decision would inevitably affect the duration of the inmate's sentence. *See id.* at 487. State law did not require "the parole board to deny parole in the face of a misconduct record or to grant parole in its absence, . . . even though misconduct is by regulation a relevant consideration . . . . The decision to release a prisoner rests on a myriad of considerations . . . . The chance that a finding of misconduct will alter the balance is simply too attenuated to invoke the procedural guarantees of the Due Process Clause." *Id.* In sum, habeas relief is available only if the challenged state action exceeds the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, imposes an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life, or will inevitably affect the duration of the inmate's sentence. *Id.* at 484, 487.

As mentioned above, upon being found guilty of the disciplinary violation, Petitioner claims he was placed in the SHU for an unspecified term.[1] As will be discussed below, under *Sandin* habeas relief is unavailable to Petitioner unless the aforementioned punishment: (1) exceeds the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force; (2) imposes an atypical and significant hardship on Petitioner in relation to the ordinary incidents of prison life; or (3) will inevitably affect the duration of Petitioner's sentence. *See id.*

**I.   Implicates Due Process Clause of its Own Force**

Petitioner's punishment of being placed in SHU for an unspecified period is not so severe a consequence to implicate the Due Process Clause of its own force. Only those changes in condition so severe as to affect the sentence imposed in an "unexpected manner" implicate the Due Process

---

[1] Because it is undisputed that Petitioner did not forfeit any good time credit, the Court will focus on his allegation that he was placed in the SHU for an unspecified term.

3

Clause itself. *Id.* at 484. Here, Petitioner's temporary placement in the SHU is a consequence far removed from more severe disciplinary actions, such as the administration of psychotropic drugs or being transferred to a mental hospital. *Id.* (citing *Washington*, 494 U.S. at 221-22 and *Vitek*, 445 U.S. at 493). The mere curtailment of an inmate's privileges while in the SHU does not rise to the level of becoming a change in condition so severe -- like those in *Washington* and *Vitek* -- that it affects Petitioner's sentence in an unexpected manner. Because Petitioner cannot demonstrate that the finding of guilt at his disciplinary hearing affected his sentence in an "unexpected manner," the 2009 disciplinary violation and the consequence of being placed in the SHU do not give rise to a due process claim.

## II.     Atypical and Significant Hardship

Petitioner's SHU term stemming from the 2009 disciplinary violation also fails to give rise to a due process claim because it did not result in an "atypical and significant hardship." While States "may under certain circumstances create liberty interests which are protected by the Due Process Clause . . . these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484 (internal citations omitted). In *Sandin*, the Supreme Court concluded that a prison disciplinary decision which resulted in one month of solitary confinement did not give rise to a due process claim because "discipline in segregated confinement did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest." *Id.* at 476, 486. The prisoner in *Sandin* was confined to solitary confinement for twenty-three hours per day, without any opportunity to interact with other inmates. *See id.* at 494 (Brennan, J., dissenting). The Supreme Court found that this period of solitary confinement "did not exceed similar, but totally discretionary, confinement in either duration or degree of restriction," and "did not work a major disruption in [the prisoner's] environment." *Id.* at 486.

In the present case, the guilty finding at issue against Petitioner did not lead to solitary confinement as in *Sandin*, instead, it resulted in a less-extreme SHU term, during which the Court

4

assumes that Petitioner's privileges were limited for an unspecified amount of time. These consequences, while inconvenient, do not significantly changed his confinement. Nor do they create an atypical and significant hardship in Petitioner's daily prison life. Because significantly more restrictive disciplinary actions -- like those in *Sandin* -- failed to qualify as an atypical and significant deprivation of a conceivable liberty interest, Petitioner fails to establish that he suffered such a deprivation.

### III.     Inevitably Affects Duration of Sentence

As mentioned above, it is undisputed that Petitioner challenges a prison disciplinary finding which did not result in forfeiture of any time credit and, thus, such a claim cannot impact the duration of his sentence. Instead, Petitioner argues that prison officials will rely on his 2009 disciplinary violation to give him an "indeterminate SHU sentence" and classify him as a "disruptive inmate." (Opp'n at 3, 7.) However, the presumption of collateral consequences does not apply to prison disciplinary proceedings. *See Wilson v. Terhune*, 319 F.3d 477, 482-83 (9th Cir. 2003). Nor is this a case where the petitioner claims that the administrative detentions may potentially affect the length of his or her confinement due to the increased likelihood of a denial at the next parole suitability hearing. *Contra Docken v. Chase*, 393 F.3d 1024, 1031 (9th Cir. 2004) (holding habeas jurisdiction is available "when prison inmates seek only equitable relief in *challenging aspects of their parole review* that, so long as they prevail, could potentially affect the duration of their confinement").

Petitioner's claim that he will be subject to an indeterminate SHU term upon at being classified as a "disruptive inmate" in the future -- possibly as a result of disciplinary violation, which he has not yet received -- is speculative. Moreover, such a claim is not yet ripe for adjudication. *Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 732-33 (1998). Finally, as explained above, the temporary SHU term at issue -- that, incidentally, Petitioner has already completed -- is not the type of atypical or significant deprivation that triggers due process protections. *See Sandin*, 515 U.S. at 476, 486.

1    In sum, under the reasoning of *Sandin*, Petitioner has no protected liberty interest and no
2 federal right to due process based on his challenge to the 2009 disciplinary violation. Without a
3 federal right to due process, Petitioner cannot state a claim for a due process violation. Accordingly,
4 Respondent's motion to dismiss is GRANTED.

**CONCLUSION**

6    For the foregoing reasons, the Court GRANTS Respondent's motion to dismiss (Docket No.
7 8). This action is DISMISSED for failure to state a claim upon which relief may be granted.

8    Further, a certificate of appealability is DENIED. Petitioner has not shown "that jurists of
9 reason would find it debatable whether the district court was correct in its procedural ruling." *Slack
10 v. McDaniel*, 529 U.S. 473, 484 (2000). Petitioner may seek a certificate of appealability from the
11 Ninth Circuit Court of Appeals.

12    The Clerk of the Court shall enter judgment, terminate all pending motions and close the file.
13    This Order terminates Docket No. 8.
14    IT IS SO ORDERED.

15 DATED: March 28, 2013

**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**